DECISION
Relator, James Goodwin, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting relator temporary total disability ("TTD") compensation only through December 15, 1998, and to issue an order that continues TTD compensation to July 11, 2000.
This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and has recommended that this court issue a limited writ returning this matter to the commission to vacate that part of its July 2000 order in which it closed the award of TTD compensation in December 1998, and to issue a new order stating a closing date for TTD compensation with a rationale that satisfies the requirements of State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203. (Attached as Appendix A.) Respondent, Intermec Media Products, Inc., ("Intermec") has filed objections to the magistrate's decision.
Intermec first argues the magistrate erred in interpreting Dr. Robert Schwetschenau's opinion in his April 25, 2000 chart note, in which he stated:
 We spent some time talking about the pros and cons of the posterior lumbar interbody fusion. Certainly I would be willing to do this but I will not become his narcotics prescriber nor carry him on any kind of disability status past six months postoperatively.
The magistrate found that Dr. Schwetschenau's statement that he would not "carry [relator] on any kind of disability status past six months postoperatively" indicated that the doctor was of the opinion that TTD compensation should have ended six months after relator's surgery on December 29, 1998. Intermec argues that this statement by Dr. Schwetschenau was in regard to the possible second surgery (posterior lumbar interbody fusion) and did not refer to relator's initial surgery on December 29, 1998 (partial lumbar laminectomy).
After reviewing the above statement, we find it is open to more than one interpretation. It is possible the doctor meant the entire second sentence to refer to the possible second surgery (posterior lumbar interbody fusion), as Intermec suggests. However, we also find it possible, though less probable, that the doctor meant the later phrases of the second sentence to refer to the completed original surgery (partial lumbar laminectomy), as the magistrate found. Thus, in this respect, Dr. Schwetschenau may have desired to convey that he would be willing to perform the second surgery but would not prescribe any more medications or carry relator on any further disability for the first surgery because six months had already elapsed since the surgery. Because we find this statement ambiguous, we find that remand to the commission is still necessary for further explanation and interpretation.
Intermec next argues the magistrate erred in finding that Dr. Steven Wunder's July 5, 2000 report was based upon only a file review and not a physical examination and, thus, cannot be used as evidence to extend the period of TTD compensation. However, a non-examining physician may render an appropriate opinion on TTD compensation if he or she reviews and considers all of the reports of the examining physicians on file and either explicitly or implicitly accepts those facts as true. State ex rel. Lampkins v. Dayton Malleable, Inc. (1989), 45 Ohio St.3d 14. It is apparent from Dr. Wunder's factual recitation that the findings of other examiners were reviewed and accepted. His report explains all of the medical records he reviewed and expressly states he accepted the allowed conditions in the claim. Dr. Wunder also specifically noted his opinion that relator's TTD compensation should be paid until three months after his surgery was compatible with Dr. Schwetschenau's findings. Therefore, this argument is without merit. However, we do note the magistrate incorrectly stated in her decision that Dr. Wunder "examined" relator, when Dr. Wunder actually performed only a file review.
After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of respondent's objections, we overrule respondent's objections and adopt the magistrate's decision as our own, except for those portions in which she states Dr. Wunder "examined" relator. Therefore, we grant a limited writ of mandamus and remand this matter back to the commission for proceedings consistent with the above findings and the magistrate's decision.
Objections overruled; limited writ granted.
LAZARUS and BOWMAN, JJ., concur.
 APPENDIX A IN MANDAMUS
Relator, James Goodwin, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting compensation for temporary total disability ("TTD") only through December 15, 1998, and to issue an order that continues TTD compensation to July 11, 2000.
Findings of Fact:
1. On April 16, 1998, James Goodwin ("claimant") sustained a work-related injury, and his claim was initially allowed for lumbosacral sprain.
2. On April 20, 1998, claimant sought treatment for his back.
3. In May 1998, the employer terminated claimant's employment for a violation of a company rule regarding drug use.
4. On August 18, 1998, a C-84 report was submitted by P.R. Schwetschenau, M.D., who opined that claimant was temporarily and totally disabled beginning on the date of injury, April 16, 1998. He stated that claimant had a herniated disc at S1-L5 and that surgery was planned as soon as the claim was allowed for the disc condition, and that claimant would not reach maximum medical recovery until after the surgery. He estimated TTD as continuing until December 15, 1998.
5. On August 18, 1998, claimant filed a request for allowance of the additional condition as well as TTD compensation beginning June 29, 1998.
6. In November 1998, a district hearing officer denied TTD compensation based on a finding that claimant voluntarily abandoned his employment.
7. On December 29, 1998, claimant underwent surgery on the injured disc.
8. In January 1999, a staff hearing officer affirmed the ineligibility for TTD compensation.
9. Further appeal was refused administratively, and claimant filed a mandamus action, case No. 99AP-655. This court concluded that claimant was not ineligible for TTD compensation based on an abandonment of employment, and issued a limited writ returning the matter to the commission for a determination on whether claimant's request for TTD compensation should be granted.
10. On remand, the employer had claimant examined on July 5, 2000, by Stephen Wunder, M.D., who opined, based on his review of the medical file, that claimant was temporarily and totally disabled from June 29, 1998, until three months after his surgery.
11. A hearing was scheduled to take place on July 11, 2000, before a staff hearing officer. On that date, claimant filed additional medical evidence consisting of Dr. Schwetschenau's notes for visits to Riverhills Healthcare, Inc., on May 5, 1999; October 13, 1999; and April 25, 2000.
a. In his May 1999 note, Dr. Schwetschenau reported that claimant was having pain, but less than before the surgery. Decreased sensation in the entire right leg was "nondermatomal and hard to explain," and he scheduled an MRI.
b. In his October 1999 note, Dr. Schwetschenau reviewed claimant's treatment with physical therapy and epidural injection, and also reviewed the results of an EMG and MRI. He advised against further surgery or steroid injections. He noted that claimant was complaining of symptoms that were clearly not explainable on the basis of the allowed disc condition. He stated that he gave a prescription for Percocet based on complaints of severe pain but stated he could not refill it.
c. In his April 2000 note, Dr. Schwetschenau reported that claimant had "never really made much in the way of an improvement," had residual radiculopathy with an absent ankle jerk, and "was always deeply involved with medications." In regard to disability, the doctor stated as follows:
 * * * I note now that he is on Methadone from Dr. Budzianoski who is closing his practice out and Mr. Goodwin now is searching for a source for continued treatment. He could be referred to another pain clinic. * * *
 We spent some time talking about the pros and cons of the posterior lumbar interbody fusion. Certainly I would be willing to do this but I will not become his narcotics prescriber nor carry him on any kind of disability status past six months postoperatively. * * *
12. Pursuant to the hearing on July 11, 2000, the staff hearing officer vacated the district hearing officer's order from November 1998 and issued the following order:
 The Hearing Officer finds that the claimant was unable to return to and perform the duties of his former position of employment for the period from 06/29/1998 to 12/15/1998 as a result of the allowed condition in this claim.
 Therefore, temporary total disability compensation is to be paid for said period * * *.
 It is the finding of the Staff Hearing Officer that the weight of evidence on file does not support of [sic] the payment of Temporary Total Disability Compensation from 12/16/1998 through 07/11/2000, the date of this hearing.
 The Staff Hearing Officer finds no credible medical evidence that documents Claimant's disability from 12/16/1998 to 07/11/2000 is due to industrial injury of date and previously recognized conditions in the claim.
 The Staff Hearing Officer denies the Temporary Total Disability Compensation requested from 12/16/1998 through 07/11/2000.
 This finding is based on reports of Dr. Schwetschenau, Dr. Wunder, and Riverhills Healthcare Inc.
13. On July 31, 2000, claimant filed a "Request for Third Hearing." He filed additional evidence, including a C-84 request for TTD dated July 12, 2000, accompanied by Dr. Schwetschenau's certification on July 18, 2000; the operative report and discharge summary from the December 1998 surgery; additional office notes from Dr. Schwetschenau; an October 1999 report from Neil Jobalia, M.D.; MRI results from May 1999; EMG results from August 1999; office notes from a pain management clinic from December 1999 to April 2000; and a January 2000 report from G. Sudashan, M.D.
14. The commission refused further appeal.
Conclusions of Law:
The issue before the court is whether the commission abused its discretion in the order awarding TTD compensation only to December 15, 1998. For the reasons set forth below, the magistrate concludes that it did.
In its order, the commission stated that its decision was "based on" the reports of Drs. Schwetschenau and Wunder. However, in regard to TTD, Dr. Schwetschenau stated clearly in his initial C-84 that claimant would not reach maximum medical improvement until after his surgery, and he further noted that surgery could not be performed until the disc condition was allowed in the claim. He estimated at that time (mid-August 1998) that TTD would continue to about December 15, 1998; however, he later stated his opinion that TTD ended six months after the surgery. Given that the surgery took place on December 29, 1998, Dr. Schwetschenau essentially opined that TTD ended as of June 29, 1999.
The magistrate recognizes that the commission was not required to rely on Dr. Schwetschenau's opinion. However, the only other medical opinion on this issue was provided by Dr. Wunder, who opined that TTD continued until three months after the surgery. Given the date of surgery, Dr. Wunder essentially opined that TTD persisted until March 29, 1999.
There was no other evidence before the commission as to the extent of TTD or the attainment of maximum medical improvement. Accordingly, in awarding a closed period of compensation, the commission did not have "some evidence" to support the close of the award on December 15, 1998. The commission stated vaguely that it did not find "the medical evidence" credible but then stated reliance on the reports of Drs. Wunder and Schwetschenau, each of whom supported an award that continued for some months after the surgery. An award of TTD from July 29, 1998 to December 15, 1998, appears to reject the opinions of both doctors on whom the commission purported to base its decision, rejecting their opinions at least in part.
The commission ordinarily has no duty to identify the evidence it rejected or to explain why it rejected one doctor's opinion in favor of another opinion. State ex rel. Bell v. Indus. Comm. (1995),72 Ohio St.3d 575. However, when the commission rejects uncontroverted evidence, it must give a reason as to why the evidence was deemed unreliable in order to permit judicial review. Similarly, when the commission chooses to accept some of a doctor's opinions and reject the rest, it must provide a reasonably clear identification of the evidence it accepted.
Here, the commission did not adequately identify the evidence on which it relied. The commission's order was internally contradictory because it stated unqualified reliance on the reports of Drs. Wunder and Schwetschenshau but then implicitly rejected their opinions as to the cessation of TTD. The order, therefore, does not comply with the principles of State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
Finally, the magistrate rejects the argument that the commission had a duty to award TTD to July 11, 2000. There was no medical evidence before the commission during the evidentiary hearings that would require such an award as a matter of law. Further, the commission was not required to consider evidence submitted after the evidentiary hearings. See State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693; State ex rel. Cordray v. Indus. Comm. (1990), 54 Ohio St.3d 99. Accordingly, the magistrate considers only the evidence that was on file during the July 11, 2000 hearing.
The magistrate therefore recommends that the court issue a limited writ returning this matter to the commission to vacate that part of its July 2000 order in which it closed the award of TTD in December 1998, and to issue a new order stating a closing date for TTD with a rationale that satisfies Noll requirements.